Ernest PAROCZAY

v.

The UNITED STATES.

No. 405-64.

United States Court of Claims.

Dec. 16, 1966.

---

Donald H. Dalton, Washington, D. C., attorney of record, for plaintiff.

George M. Beasley, III, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant. Ned W. Manashil, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

Plaintiff, a veterans' preference employee of the Weather Bureau in the Department of Commerce, who was reinstated to his position pursuant to a 1963 District Court decision,[1] was awarded back pay under the Lloyd-LaFollette Act, as amended, 5 U.S.C. § 652 (1964 Ed.). He sues here for additional amounts, i. e., within-grade and statutory salary increases, monetary allowance for annual and sick leave which he would have accrued during the period of separation, the refund of deducted premiums for Federal Employees' Group Life Insurance, and

1. Paroczay v. Hodges, 219 F.Supp. 89 (D.D.C.1963).

refund of deduction of his earnings in an unprofessional capacity as a clerical employee of Food Fair Stores, Inc. In oral argument, plaintiff indicated he did not contest the deductions for civil service retirement. The questions involved are (1) whether the back pay awarded plaintiff under the Lloyd-LaFollette Act should have reflected within-grade and statutory salary increases, annual and sick leave credits, and/or deductions for Federal Employees' Group Life Insurance, and (2) whether the back pay awarded plaintiff should have been reduced by plaintiff's earnings in an unprofessional as well as a professional capacity.

Both plaintiff and the government have filed motions for summary judgment, and the facts presented by the pleadings, affidavits, and exhibits, are as follows: In June 1963, the U. S. District Court for the District of Columbia determined that plaintiff had been improperly separated from his employment on April 13, 1960. At the time of his separation, plaintiff was classified as a Meteorologist, GS–1340–11, $7,510 per annum, U. S. Weather Bureau, Department of Commerce, Washington, D. C., and he was covered by Federal Employees' Group Life Insurance. Pursuant to the order of the District Court, plaintiff was sent a registered letter dated October 4, 1963, which outlined the details of his restoration and the procedure he was to follow to obtain back salary. Specifically, the letter informed plaintiff "your back pay will be at the rate you were being paid on April 13, 1960, less any amounts earned by you through other employment * * * [so] you should submit promptly a notarized statement of your total earnings from each employer since April 13, 1960 * * *." On October 21, 1963, plaintiff was restored to active-duty status in the Weather Bureau. In accordance with the directions specified in the October 4 letter, plaintiff submitted a statement of his earnings for the period subsequent to April 13, 1960, and on February 5, 1964, a check for $2,084.72, drawn to plaintiff's order, was sent to his attorney with a detailed breakdown of the manner in which it was computed. The letter also indicated that an error of $17.80 had been made which was corrected with the issuance of an additional check a few days later. Apparently plaintiff cashed both checks in February 1964. Thereafter, by letter dated February 14, 1964, sent to the General Accounting Office in plaintiff's behalf, an assertion was made that plaintiff was entitled to within-grade increases, statutory salary increases, and a monetary allowance for annual leave. By letter dated June 25, 1964, the Assistant Comptroller General of the United States denied plaintiff's claim on the ground that plaintiff had been properly paid in accordance with 5 U.S.C. § 652(b) and related decisions of the Comptroller General. Subsequently, on December 1, 1964, plaintiff filed a petition in this court.

■ Respecting plaintiff's claim for within-grade and statutory salary increases, it is apparent that as a consequence of the District Court decision holding that plaintiff's separation was unjustified or unwarranted, plaintiff was restored to an active-duty status and paid back salary in accordance with 5 U.S.C. § 652(b) (1) (Lloyd-LaFollette Act). See Green v. United States, 109 F.Supp. 720, 124 Ct.Cl. 186 (1953); O'Brien v. United States, 124 Ct.Cl. 655 (1953). Section 652(b) (1) provides in pertinent part:

> Any person removed or suspended * * * who * * * is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension * * *.

This court has, on many occasions, held that under the terms of the Act, similarly situated plaintiffs are not entitled to recover within-grade and statutory salary increases. Everett v. United States, 340 F.2d 352, 169 Ct.Cl. 11 (1965); Schaller v. United States, 311 F.2d 796, 160 Ct.Cl. 174 (1963); Cathie Lee Clark v. United States, 156 Ct.Cl. 699 (1962); Mayer v. United States, 145 Ct.Cl. 181 (1959); Pechette v. United States, 145 Ct.Cl. 189

(1959); O'Brien v. United States, 151 F. Supp. 282, 138 Ct.Cl. 296 (1957); Kalv v. United States, 124 F.Supp. 654, 128 Ct. Cl. 207 (1954); Green v. United States, supra; O'Brien v. United States, 124 Ct. Cl. 655 (1953); Jaffe v. United States, 124 Ct.Cl. 755 (1953). Plaintiff has cited cases wherein this court has allowed within-grade and statutory salary increases. Harris v. United States, 149 Ct.Cl. 15 (1960); Smith v. United States, 151 Ct.Cl. 205 (1960); Crocker v. United States, 127 F.Supp. 568, 130 Ct.Cl. 567 (1955). However, these cases may be distinguished as arising under different provisions. It is, therefore, concluded that plaintiff is not entitled to recover compensation for within-grade and statutory salary increases.

Similarly, plaintiff is not entitled to recover the monetary equivalent of annual or sick leave. Section 652(b) (2) provides in pertinent part:

Any person who is discharged * * [and subsequently] restored to duty * * * shall be paid compensation * * *, and shall for all purposes *except the accumulation of leave* be deemed to have rendered service during such period. [Emphasis added.]

This court, in passing on the right to recover an allowance for leave under the above section, has consistently held that restored employees cannot recover. Everett v. United States, supra; Schaller v. United States, supra; Zeiger v. United States, 295 F.2d 915, 155 Ct.Cl. 353 (1961); Leverette v. United States, 142 F.Supp. 955, 135 Ct.Cl. 207 (1956).

We turn now to the question of whether plaintiff's recovery should be reduced by $182 as the amount of Federal Employees' Group Life Insurance premiums for the period of wrongful separation. Plaintiff relies principally on Russell v. United States, 320 F.2d 920, 162 Ct.Cl. 544 (1963) in which the court held that insurance premiums should not be deducted. Before examining the *Russell* decision, it is important to set out the group life insurance scheme. Since 1954, the Civil Service Commission has been authorized to purchase group life and ac-cidental death and dismemberment insurance from life insurance companies for the benefit of a broad class of Federal employees. Federal Employees' Group Life Insurance Act of 1954, ch. 752, 68 Stat. 736, 5 U.S.C. §§ 2091–2103 (1964 Ed.). The Act provides that each qualifying employee shall be automatically insured subject to his giving written notice on a prescribed Civil Service Commission form that he does not desire insurance. 5 U.S.C. § 2094(a). For each insured employee, the Act provides for a withholding of part of his salary and a contribution from the government. 5 U.S.C. § 2094(a), (b). These sums are placed in a government-managed insurance fund, part of which is paid to life insurance companies as insurance premiums. 5 U.S.C. §§ 2094(c), (d), 2096, 2097.

Had plaintiff never been separated from the Weather Bureau, premiums would have been withheld and insurance coverage would have continued. By virtue of the District Court's decision, plaintiff was in effect reinstated as of the separation date, so it is as though he never was separated. The fact of constructive reinstatement, of course, does not of itself establish that plaintiff was covered for the period of wrongful separation as a matter of law. For this we must look to the statute, the insurance contract, and the announced policy of the Civil Service Commission. The statute does not give a specific answer, although it is possible to read into the automatic coverage theory the conclusion that a reinstated employee must have all the benefits he would have had without wrongful separation. Similarly, the insurance policy or contract with the Metropolitan Life Insurance Company has no specific clause to cover this situation. Significantly, however, it provides for coverage of "employees" and leaves to the Civil Service Commission as "policyholder" the authority to make "conclusive determination[s]" of the classification of any persons as "employees" and "the fact and date of * * * separation of an Employee from the service, * * * and cessation of an Employee's classifi-

cation as an Employee * * *." We are told by defendant's affidavits that the Civil Service Commission's Bureau of Retirement and Insurance interprets the insurance contract, and in particular the above-quoted language, in such a way that "an employee * * * improperly removed from his employment and subsequently restored retroactively by judicial or administrative action * * * is considered to have been an employee within the meaning of the Act for the entire period of wrongful removal or suspension." Affidavit of Andrew E. Ruddock, Director, Bureau of Retirement and Insurance, U. S. Civil Service Commission, September 22, 1966. In another affidavit, the same affiant stated: "Had the employee died during this period, the restoration action would have required payment to his beneficiary or next of kin of the amount of insurance involved." This undisputed testimony is corroborated by facts (established by defendant's exhibits) showing that the defendant took the $182 withholding from plaintiff's back pay award, added to it $91 as the proper government contribution, and remitted the total amount to the Metropolitan Life Insurance Company. Although it is not beyond doubt, we are persuaded that at least as between plaintiff and the government the insurance was in effect as a matter of law for the period in issue.[2] We think this is consistent with the statute and the insurance contract, and it is definitely the Civil Service Commission's interpretation. Viewed as such, it was the legal duty of the government under the statute,[3] regulation,[4] and Civil Service Commission instructions,[5] to withhold the premiums and make a contribution. This has been the result in two recent post-judgment orders in this court. Clark v. United States, 170 Ct.Cl. 898 (1965); Clark v. United States, 156 Ct.Cl. 699 (1962).

■ Plaintiff understandably finds comfort in the *Russell* case. Much of the discussion there concerned the issue of coverage for the period of removal, but the court made no conclusion on the matter. Rather, it looked to the fact that the plaintiff's removal preceded the effective date of the Federal Employees' Group Life Insurance scheme, so the plaintiff never had the opportunity to notify his employing agency that he did not desire to be covered. In the present case, however, the plaintiff was covered by group life insurance both before his removal and after his reinstatement. There is no suggestion that he would have waived coverage during the removal period had he thought to; it appears that if he had not been removed, he would have wanted his coverage to continue as usual. This fact, coupled with our conclusion that plaintiff was covered during the removal period, persuades us that plaintiff should have to pay his share of the cost of his insurance coverage.

■ Finally, plaintiff claims there should have been no deductions of his earnings in an unprofessional capacity as a clerical employee of Food Fair Stores, Inc. Section 652(b) simply provides that back pay awarded to a reinstated employee is to be reduced by " * * * *any* amounts earned by him through *other* employment during such period * * *." [Emphasis added.] The statute does not distinguish between amounts earned in an unprofessional capacity and those earned in a professional

---

2. Under the insurance scheme, the government contracts for its employees with the insurer; benefits are paid directly by the insurer to the employees. Although the policy gives the government power to define "employee," it is not clear that the insurer would readily pay the beneficiary of an employee whose separation was proven improper. This follows from the fact that during the separation period no premiums would have been paid. Regardless of the insurance company's contractual liability, however, it is reasonable to hold the government for the full amount of the insurance benefits, for it would be the government's error in wrongfully separating the employee which would have occasioned the loss of the benefit.

3. 5 U.S.C. § 2094 (1964 Ed.).

4. 5 C.F.R. § 37.4 (1961 Ed.).

5. Federal Personnel Manual Supplement 870–1, S4–2.

capacity. The statute, on the contrary, says any amounts earned through any other employment are to be deducted from back pay. Plaintiff counters with the case of Kanarek v. United States, 314 F.2d 802, 161 Ct.Cl. 37 (1963), cert. denied, 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964). The plaintiff in that case, however, did not work at all, claiming that the only jobs available were of a type far below not only his level of intelligence, but below the level of his former employment. The government in that case contended plaintiff could not recover because he had not sought outside employment. This court simply held that Kanarek need not have sought or taken jobs of that type. The case is clearly inapposite to the case at bar, because plaintiff here did in fact earn something from a "lower level" job. Consequently, we hold that plaintiff is not entitled to recovery on this aspect of his claim.

Defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. Plaintiff's petition is dismissed.